(No. 22358.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ROY COSTA *et al.* Plaintiffs in Error.

*Opinion filed April 21, 1934.*

ANTHONY J. CALIENDO, for plaintiffs in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, J. ALBERT WOLL, HENRY E. SEYFARTH, and AMOS P. SCRUGGS, of counsel,) for the People.

Mr. CHIEF JUSTICE ORR delivered the opinion of the court:

Roy Costa and Sam Castegnino (referred to herein as defendants) waived a jury trial and were tried and found guilty of robbery by Judge Harry B. Miller in the

criminal court of Cook county. They had been charged with robbing a night watchman of a gun, valued at $27, after the watchman had extracted the cartridges therefrom. They were each sentenced to serve from one to twenty years in the penitentiary, and by this writ of error seek a reversal because, as they allege, the judgment is against the manifest weight of the evidence.

In August, 1933, Joe Kabala, the prosecuting witness, was employed as night watchman of a business building in Chicago. Near 2:15 o'clock in the morning of August 27 Kabala called police to investigate a window smashing in a building near by. Some ten minutes later, while waiting in the open front doorway for the officers, he was confronted by the two defendants while two other men were a short distance away. Kabala testified defendants thrust some flowers in his face and asked him for the use of his revolver in frightening away the two men, who had been following them. Kabala said he tried to close the door, but Costa placed his foot in the door opening and prevented this. Costa at the same time thrust his pocket-enclosed hand against Kabala as if he were holding a gun and told Kabala to turn over the gun or he would let him have it. Kabala withdrew his revolver from the holster, broke the action, removed the cartridges, which he put in his pocket, and gave the revolver to Costa. Kabala said he started to retreat inside the building but was intercepted by defendants, Costa brandishing the revolver as if to strike him. At this moment police officers arrived and placed defendants under arrest. They were searched and Kabala's unloaded revolver was found in Costa's pocket. Kabala stated that after defendants secured the revolver they tried to persuade him to turn over the cartridges, but he refused.

James Moran, a police officer, testified that when the police drove up to the building he saw defendants and Kabala standing in the entrance, engaged in a heated conversation. In response to his inquiry Castegnino said he

was trying to help Kabala apprehend two men who had apparently broken a near by window. Kabala did not say anything until he was asked "what it was all about." He then said defendants came in and took his gun, or intimidated him and he handed the gun over. Moran said Costa was not trying to strike Kabala with the gun and that both defendants appeared to have been drinking. Michael Gannon, another officer, said he saw defendants for the first time with Kabala when the police car drove up; that defendants then ran out of the building; that when the police arrived defendants were pushing Kabala around the building and had him against the wall. Albion C. Jones, another officer, said it appeared to him as if the three were arguing when the police car drove up. He could see their hands moving around, and all three came out of the building when the police went toward the door.

Defendants testified that they had been to a party where they had plenty to drink, and that upon leaving the party they started for Washington street, their route taking them past the building which Kabala was guarding. Each defendant was carrying a bouquet which he had received as a party favor. Both men were staggering a little when they arrived at Throop and Harrison streets. Here they met two strangers, who by their actions caused defendants to believe were hold-up men. A short distance past the intersection Costa noticed Kabala standing in the building entrance carrying a holstered revolver. He asked to borrow the gun to scare the strangers by firing a shot up in the air. Costa related that Kabala extracted the cartridges and turned the revolver over to him. Costa told him the gun was useless without the cartridges, in the meantime putting the revolver in his pocket. While engaged in the argument with Kabala over the cartridges the officers came. Costa denied having his hand in his pocket or threatening Kabala or having an intention to rob him. He admitted being "a little drunk," but did not think he stuck the flowers

in Kabala's face. Castegnino told practically the same story as Costa. He also said that he lived in the neighborhood and had seen Kabala before. According to this defendant, Kabala was laughing when he extracted the cartridges from the revolver and turned it over to Costa. Castegnino related that he told the officers, when arrested, about the two men who had been following them, but the police did not seem to be interested.

The People have failed to establish, beyond a reasonable doubt, the most essential element of the case—that a robbery was, in fact, committed. Certainly no robbery has been committed where an armed night watchman, after having some flowers pushed in his face, obligingly unloads his revolver and hands it over to a couple of drunken sots, who are found arguing with him about the cartridges when the police arrive. The record is bare of circumstances which would warrant this court or the trial court in attaching more importance to the testimony of Kabala than to the testimony of defendants. The testimony of Kabala in large part corroborated the defendants' version of the affair. For instance, he said that he saw two men a short distance away when he first saw defendants, and admitted that defendants wanted the revolver in order to frighten two men who had been following them. He also said that he could have killed defendants with his gun if he had thought he was being held up. From even the most serious view of the case it appears that Kabala might have been fooled or tricked, or perhaps scared, but not robbed. Without further consideration of the testimony it is apparent that the judgment was against the manifest weight of the evidence. On the basis of the record the judgment of the trial court should have been "not guilty."

The judgment is reversed.          *Judgment reversed.*